I, DAVID S. GORBATY, Judge.
Defendants, Performance Motorwerks, Inc., and Charles Healy, III [1], d/b/a Performance Motor Car Gallery, appeal a judgment rendered in favor of Gladys Martin for $466,500.00. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
Gladys Martin, her daughter and niece visited the defendants’ automobile showroom on May 27, 1993 to look at a vehicle Ms. Martin was interested in buying. According to both Ms. Martin and her daughter, Dana Brown, it was Ms. Martin’s intention to test drive the vehicle and have it *842 inspected by a private mechanic. The three women drove to the dealership, where Ms. Brown, who was driving her personal automobile, was instructed to park in a covered building next to the showroom that served as both a service and detailing area. Ms. Brown testified that the spot where she was instructed to park was immediately adjacent to the detailing area where a man was steam cleaning a car engine. As Ms. Martin |¡>was alighting from the car, she claims to have lost her footing because of either water or some other substance on the ground. She struck her back on the running board of the car and her head on the frame between the front and rear doors, and landed on her back on the concrete floor. Ms. Martin claims to have lost consciousness, a claim corroborated by her daughter, a registered nurse. Following the incident, Ms. Martin testified that the man detailing the car brought her a towel to place under her head. Ms. Martin claims that a woman came out of the office and told her to be careful because it is always slippery in that area. The woman explained that she takes her shoes off everyday. Because the woman claimed to be at the dealership everyday, Ms. Martin assumed that she was an employee. Ms. Martin also testified that another woman, whom she identified at trial as Mrs. Healy, came out of the office and proceeded to yell at Mr. Lee, the salesman with whom she had scheduled the appointment, because of where he had told the Martin party to park. Mrs. Healy did not talk to Ms. Martin at all. When Ms. Martin was able to move, her daughter and niece helped her into the dealership showroom where they sat for a while. Ms. Martin told Mr. Lee that she would not be able to test drive the car that day, but would like to come back to do so.
Mr. Michael Lee, who had been employed by defendants since 1982, testified that he did not instruct Ms. Martin’s daughter on where to park. He saw them pull up in front of the dealership, but was distracted by some activity in the street. When he entered the service area, he noticed Ms. Martin seated in the passenger seat of the car with the door open and her feet on the ground. He |3approached the car, and was told by either Ms. Martin or her daughter that Ms. Martin had fallen. He did not observe anything on the ground near where she claimed to have fallen. Mr. Lee said the floor was a pebble concrete painted with epoxy paint. The detail area was about thirty feet to the left of where the car was parked; the floor sloped toward a drain near the wall. Mr. Lee denied that Mrs. Healy yelled at him, and he believed it may have been Mrs. Healy who asked Ms. Martin to go into the showroom lounge area. Mr. Lee testified that Ms. Martin test drove the vehicle the day of the accident, but returned the next day to take it to a mechanic.
Mrs. Mary Healy testified that when someone reported to her that a customer had fallen, she left her office and found Ms. Martin seated in the lounge area. Mrs. Healy inspected the area where the car was parked, but found no water, wax, or other substance on the floor. She claimed that she asked Ms. Martin if she was hurt, and she denied being so. She remembers all three women continuing to look at cars on the showroom floor, and did note that they were all barefooted. On cross-examination, Mrs. Healy admitted that Michael Lee told her he had directed the Martin party to the parking space.
Following a bench trial, the trial court rendered judgment in favor of Ms. Martin, awarding her the lump sum of $466,500, with costs and interest. The reasons for judgment explain that the trial court accepted Ms. Martin’s version of how the accident happened. The trial court specifically found that, although Ms. Martin’s *843 medical records indicated that she had previously suffered from | ¿headaches, loss of concentration and memory loss, those conditions had cleared up at least six years prior to the accident in question. Therefore, the court attributed Ms. Martin’s claims of injury in this suit to the accident of May 27,1993.
DISCUSSION:
Defendants make three assignments of error. First, the trial court erred in its application of La.Rev.Stat. 9:2800.6 because there was an absence of proof of constructive notice of a dangerous condition. Second, the trial court erred in attributing Ms. Martin’s injuries to the slip and fall. Last, the trial court abused its discretion in awarding $466,500 in general damages for the injuries allegedly sustained.
Louisiana Revised Statute 9:2800.6 was amended in 1996. Prior to that amendment, and at the time of the subject incident, the pertinent parts of the statute read as follows:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death or loss sustained because of a fall due to a condition existing in or on a merchant’s premises, the claimant shall have the burden of proving, and in addition to all other elements of his cause of action, that:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable;
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence; and
ls(3) The merchant failed to exercise reasonable care.
An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless such finding is clearly wrong. Stobart v. State, 92-1328 (La.4/12/93), 617 So.2d 880; Rosell v. ESCO, 549 So.2d 840 (La.1989). Further, “where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous or clearly wrong.” Stobart, supra; Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one in light of the evidence in the record. Stobart, supra.
Although not specifically stated in its reasons for judgment, it can be inferred that the trial court accepted plaintiffs version of how the accident occurred, that is, there was some substance on the floor that caused Ms. Martin to slip and fall. It can be further inferred that the trial court found the substance presented an unreasonable risk of harm to the plaintiff, the risk of harm was reasonably foreseeable, and that defendants created the risk.
Defendants argue that the trial court erred because La.Rev.Stat. 9:2800.6 requires plaintiff to prove that the merchant had constructive notice of the potential hazard. However, La.Rev.Stat. 9:2800.6 B(2) provides that the plaintiff must prove either that the merchant created or had actual constructive notice of *844 the condition. Plaintiffs supplied ample evidence, which the trial court accepted as true, that there was an employee of defendants cleaning a vehicle with a steam cleaner immediately adjacent to the spot where Ms. Martin slipped. Ms. Martin and her daughter both testified that there was water over the entire area, and a wax-_jike6 substance in= a small area near the fall. On the other hand, defendants presented conflicting testimony as to whether the floor was wet at all. Both Mr. Lee and Mrs. Healy testified that there was no water or any other substance on the floor near where Ms. Martin’s vehicle was located. However, Mrs. Healy also testified that when she saw Ms. Martin, her daughter and niece in the showroom, they were all barefooted. It is entirely plausible for the trial court to have reasoned that these persons were barefooted because of a wet condition in the service/detail area from which they had come. Thus, the record supports the trial court’s findings of fact, and this Court is bound not to upset such findings. Accordingly, we find no error in the trial court’s application of La.Rev.Stat. 9:2800.6.
In their second assignment of error, defendants claim that the trial court erred in attributing any of Ms. Martin’s injuries to her accident of May 27, 1993. Although none of Ms. Martin’s treating physicians testified at trial, all of the perpetuation depositions were submitted into evidence for the trial court’s review. The trial court recognized that Ms. Martin had been treated by Dr. Mohnot in 1985, 1986 and 1987 for complaints of “trouble concentrating,” “forgetfulness,” ■ and headaches. However, the court specifically quoted Dr. Mohnot’s note of 10/1/87:
[Patient] [d]oing fine no headaches for the last 7 [months] she — is separated for the last 7 months, she feels she is under less stress since separation.
The trial court thus opined that the headaches and head pain complained of prior to the May 27, 1993, accident had completely resolved, and that Ms. Martin’s injuries complained of in this suit were indeed caused by the May 27 slip and fall. A thorough reading of Dr. Mohnot’s deposition reveals that Ms. Martin reported to him on March 3, 1988, that she had sporadic headaches which were relieved with the use of extra-strength Tylenol. Dr. Mohnot did not attribute these particular ^headaches to a fall Ms. Martin suffered in 1986. In September of 1988, Ms. Martin reported that her headaches were better, and in October of 1989, she reported the headaches were much better. Ms. Martin saw Dr. Mohnot again in May of 1990, and told him she was seeing another physician for neck and shoulder pain, but she rarely experienced headaches. In January of 1991, Ms. Martin did report having daily headaches, but when she returned to Dr. Mohnot’s office in February of 1993, she had no complaints of headache.
The decision by the trial court to attribute Ms. Martin’s complained of injuries to the May 27 accident is based on a finding of fact. This finding of fact is supported by record evidence. As such, this Court should not upset the trial court’s findings of fact unless they are manifestly erroneous or clearly wrong. Stobart, supra; Rosell, supra. Accordingly, we find no error in the trial court’s ruling on this issue.
In their last assignment of error, defendants assert that the trial court abused its discretion in awarding $466,500 in general damages for the injuries allegedly sustained.
The judgment rendered by the trial court was a lump sum award, that is, the elements of the award were not broken down. In her petition, Ms. Martin made claims for past and future medical expenses, past and future lost wages and/or *845 loss of wage earning capacity, and past and future physical and mental anguish, pain and suffering, anxiety, humiliation, embarrassment and loss of impairment to enjoy life’s pleasures.
The fact finder has great discretion in determining the amount of damages, and appellate courts should rarely disturb such an award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993). It is well settled that a lump |ssum judgment is presumed to award all items of damages claimed. Bryan v. City of New Orleans, 98-1263, p. 2 (La.1/20/99), 737 So.2d 696, 697-98. The appellant’s burden of proving the fact finder clearly abused its great discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable. Id., 98-1263 at p. 3, 737 So.2d at 698.
The only element of damage claimed by Ms. Martin that can be definitively determined is her claim for past medical expenses totaling $63,448.59. A review of the medical bills reveals that there are some questionable expenses that could possibly be unrelated to the accident in question. However, because the trial court awarded a lump sum, it is not possible to ascertain whether or not the trial court awarded the full amount of past medicals claimed or whether it excised any expenses it deemed unrelated.
The remaining damages claimed by Ms. Martin include a claim for past and future lost wages and/or loss of wage earning capacity. Ms. Martin testified she was netting $400 per week at her last place of employment. Since the time of the accident, she has been unable to work, a claim substantiated by medical testimony.
A claim for loss of earnings need not be proven with mathematical certainty, but only by such proof as reasonably establishes the claim. Trunk v. Medical Ctr. of Louisiana, 2003-0275, p. 8 (La.App. 4 Cir. 12/17/03), 863 So.2d 675, 682. Thus, the question for the trial court is what plaintiff might have been able to earn but for his injuries and what he may now earn given his resulting condition. Id.; Finnie v. Vallee, 620 So.2d 897, 900 (La.App. 4 Cir. 5/27/93). The plaintiffs earnings at the time of the accident are relevant but not necessarily indicative of a past or future earning, capacity. Richardson v. O’Byrne, 2000-2202, 2001-1697, 2002-0753, p. 15 (La.App. 4 Cir. 10/16/02), 830 So.2d 1013; Finnie, supra.
19InitiaIly, it is impossible to determine from the lump sum award if the trial court awarded past lost earnings, future lost earnings, or a loss of earning capacity. However, there was sufficient unrebutted evidence in the record to support the fact that Ms. Martin was earning $400 per week net prior to this incident. There was also uncontradicted medical testimony that she is unable to return to work at this time. Accordingly, we cannot disturb the damages award on this issue.
The remaining elements of damages claimed by Ms. Martin are general in nature. It is well settled that a trier of fact is granted much discretion in the award of general damages, i.e., those that may not be fixed with any degree of pecuniary exactitude but that, instead, involve mental or physical pain or suffering, inconvenience, the loss of gratification of intellectual or physical enjoyment, or other losses of life or life-style. Gresham v. Production Management, Inc., 2002-1228, p. 11 (La.App. 4 Cir. 2/11/04), 868 So.2d 171, 179; Boswell v. Martin Lumber Co., Inc., 363 So.2d 506 (1978). As stated above, appellate review of awards for general damages is limited to determining whether the trier of fact abused its vast discretion. Youn, supra.
' After reading the record in its entirety, this Court is of the opinion that the award *846 to Ms. Martin is excessive. Ms. Martin’s testimony revealed that she could remember some incidents without difficulty, and, indeed, with tremendous detail and specificity. However, when attempts were made to challenge her credibility such as questions about prior testimony or histories given to treating physicians, she consistently claimed she could not remember. Despite our reservations concerning the excessive nature of the award, however, because the award was a lump sum and in light of the above standards of review for the individual elements |inof damage, we are bound to not disturb the award. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.

. The petition names Charles Healy, II, as a defendant. However, the answer filed on behalf of defendants is on behalf of Charles Healy, III. Mrs. Mary Healy, Charles' wife, testified that his correct name is Charles Healy, II. For purposes of this opinion we will refer to the defendants collectively as "defendants.”