^INTRODUCTION
In this writ application, relator, Louisiana-I Gaming, a Louisiana Partnership in Commendam, d/b/a Boomtown Casino *290 (hereinafter “Boomtown”),[1] seeks this Court’s supervisory review of the trial court’s judgment denying its re-urged motion for summary judgment. For the following reasons, we grant this writ application, reverse the trial court’s denial of relator’s re-urged motion for summary judgment, grant relator’s.re-urged motion for summary judgment, and dismiss this matter with prejudice at plaintiffs costs,

FACTS AND PROCEDURAL HISTORY

This matter concerns respondent, Tena Foster’s, alleged July 22, 2013 fall in the Boomtown Casino located in Harvey, Louisiana. On February 13, 2014, Ms. Foster filed a petition for damages alleging that while she was walking in the buffet area inside the casino, she suddenly and without warning fell “due to a crack on the floor.” Boomtown previously filed a motion for summary judgment that |3was denied by the trial court- on August 18, 2014. Following completion of discovery, Boomtown filed a motion to re-urge summary judgment, in which it argued that Ms. Foster cannot prove that: (1) any alleged crack on the tile floor created an unreasonable risk of harm that was reasonably foreseeable to Boomtown; (2) Boorntown had either actual or constructive notice of a defect posing an unreasonable risk of harm; and (3) Boomtown failed to exercise reasonable care in correcting or warning of said condition. Boomtown further1 argued that the alleged crack in the tile floor was a common, ordinary, open and obvious condition and did not present an unreasonable risk of harm.
With its re-urged motion for summary judgment, Boomtown provided the report and affidavit of its expert, Kevin C. Van-derbrook, who holds a Master of Science degree in civil engineering and is a licensed professional engineer in Louisiana. According to his affidavit, Mr. Vander-brook has been accepted as an expert in the field of structural engineering by Louisiana courts and has testified as an expert witness in matters .arising from alleged tripping hazards, in both depositions and at trial.[2] Mr. Vanderbrook further attested that on April 10, 2014, he inspected the floor in front of the buffet at the Boom-town Casino where Ms. Foster allegedly fell “in order to determine whether any defects existed in the floor.” Upon being shown the area-where Ms. Foster allegedly fell, Mr. Vanderbrook observed “a tile that had several spider-web cracks- originating generally from the center of this tile.” Mr. Vanderbrook measured the tile to be 6 inches by 24 inches. After examining the cracked surface of the tile “carefully,” Mr. Yanderbrook noted, that “the crack vertical offset between any of the [ individual cracks was less than í/16th inch.” Based .upon his. inspection of the floor where Ms. Foster allegedly fell, Mr. Vanderbrook concluded that:
a. One of the ceramic tiles in the buffet line area was cracked, likely due from-an item dropped on the tile. This cracked in a spiderweb pattern but did not contain any significant voids or holes in the tile.
b. There was no measurable vertical offset between any of the cracked surfaces on this tile.
c. These tiles are standard ceramic tiles, are in compliance with all applicable building codes and do not present any unreasonable risk of *291 harm to persons standing or walking on this surface.
d. There were no holes in the tile at the cracked surface which would present an unreasonable risk of harm to persons walking in this area. Even if a person had a skinny point high heel shoe, the cracks do not present any vertical offset which would create a tripping hazard.
In his affidavit, Mr. Vanderbrook specifically opined that:
Based on my observations, it is my opinion that the cracks in this tile did not present an unreasonable risk of harm to persons in this area. The cracks propagate through the tile but do not contain any vertical offset or holes which would potentially catch someone’s shoe or create a tripping hazard.
Numerous photographs showing the buffet area of the casino and the particular cracked tile in question were attached to Mr. Vanderbrook’s report, which was attached to his affidavit.
Boomtown also provided the affidavit of Jeannine Richert, a risk and safety manager for the Boomtown Casino, with its re-urged motion for summary judgment. In her affidavit, Ms. Richert stated that she searched Boomtown’s records and confirmed that “Boomtown received no complaints of a fall hazard in the tile floor in front of the buffet area where Ms. Foster fell prior to her fall.” Further, Ms. Ric-hert attested that “[b]etween the time of the subject incident and the inspection by Mr. Vanderbrook, the cracked floor tile at issue was not repaired, removed,'or replaced.” Attached to Ms. Richert’s affidavit was the incident report prepared by Boomtown in response to Ms. Foster’s fall. It included Ms. Foster’s | ¡voluntary statement in which she wrote that “[she] was walking around the buffet area preparing [her] food on [her] plate, when [her] heel on .[her] shoe got caught in a crack on the floor at the buffet area, which caused [her] to. fall-and hit [her] arm and hand and head on the floor,”[3]
Boomtown also attached excerpts from the depositions of Ms. Foster and her friend, Cheryl Gordon, who was with Ms. Foster at the casino when the accident in question occurred, to its re-urged motion for summary'judgment. In her deposition, Ms. Foster testified that she was fixing her food in the buffet line at the casino when she fell. She was wearing Coach brand slip-on shoes with heels two to three inches high.[4] She believed the reason she fell was because of the “cracked tiles.” In explaining this, she testified:
All I know is, I was fixing my food. I went to step over to fix something else and I fell. I’m assuming that it was my footing got caught into the crack and I fell. (Emphasis added.)
Following her fall, Ms. Foster saw the cracks in the tile and described the cracks as being “like little pieces of the tile, like you know how you crack something and you have like a little gap or like a little piece or something was at and it’s no longer there.” She could not say how big the gap was or if it was wider than a pen. She was shown a photo of the alleged cracked floor tile at her deposition, but *292 could not say that it was the cracked floor tile that she fell near.
In her deposition, Ms. Gordon testified that she did not see Ms. Foster fall, but only noticed her after she fell. When asked if there was anything about the floor that may have caused Ms. Foster to fall, she responded that there was a crack in the floor that she saw. She testified that she did not remember how wide the | ficrack was or the number of cracks that existed. All she knew was that “[Ms. Foster] fell because of the crack.” She did not know the “actual details.” She testified that because Ms. Foster was carrying a tray, she “probably couldn’t see the crack on the floor in front of her to go around or whatever.”
In her opposition to the re-urged motion for summary judgment, Ms. Foster asserted that “Boomtown has not met its initial burden of proof in showing that no genuine issues of material fact exists,” and thus, Ms. Foster “is not reciprocally subject to any shifting burden that would require her to prove every element of her case on paper.” Ms. Foster further asserted that “[wjhether the acknowledged defective condition, cracks in the tile floor, poses an unreasonable risk of harm is an opinion,” and that “[a] motion for summary judgment is not the proper procedural device to make determinations on opinions.” The opposition goes on to note that Boomtown “dismisses so many other possibilities of how a crack in a tile could create an unreasonable risk of harm,” like the tile being loose.
Ms. Foster also challenges the credibility of Boomtown’s expert witness, arguing that Mr. Vanderbrook is only a civil engineer and not a biomechanical expert and is thus not qualified to give “an expert opinion on how the human body would react when acted upon by external forces.” Also, Ms. Foster argues that although Mr. Vanderbrook measured the crack, he didn’t “check to see if the pieces of cracked tile were loose.” Further, Ms. Foster asserted that because of the nature of the “hazardous condition” (cracked floor tiles in the buffet area), Boomtown knew or should have known, or had actual or constructive notice, of the “hazardous condition” which caused Ms. Foster’s fall. Additionally, she argues that Boomtown did not exercise reasonable care and should have replaced the tile. Finally, Ms. Foster argues that Mr. Vanderbrook’s expert report was conducted in April 2014, when the accident occurred the previous July, and contains numerous |7hearsay statements and argument. Noteworthy, Ms. Foster presented no evidence with its opposition to Boomtown’s re-urged motion for summary judgment.
A hearing was conducted on Boomtown’s re-urged motion for summary judgment on November 3, 2015.[5] On November 18, 2015, the trial court signed a judgment denying Boomtown’s re-urged motion for summary judgment, stating the following in written reasons for judgment issued that same day, to-wit:
This Court finds that based upon the information supplied by both counsel and La. C.C.P. art. 966(C) and 967(B), there exists material factual disputes. Further, Mover fails to point out to the court that there is an absence pf factual support for one or more elements essential to the adverse party’s claim. The Court finds that Mover has not carried its burden of proof as required by law.
*293 In its writ application, Boomtown repeats the arguments it made in its reurged motion for summary judgment. Boomtown asserts that the trial court erred in denying its re-urged motion for summary judgment because Ms. Foster presented no evidence that the cracks in the floor tile in. question presented an unreasonable risk of harm to Ms. Foster that was reasonably foreseeable. Boomtown argues that the evidence it presented with its re-urged motion for summary judgment (excerpts of deposition testimony of Ms. Foster and Ms. Gordon, the affidavit and report of its expert, Mr. Vanderbrook, and the. affidavit of Ms. Richert) more than adequately meets its initial burden of proving that no genuine issue of material fact exists. Boomtown argues that in response to its reurged motion for summary judgment, Ms. Foster failed to present any evidence whatsoever, including any expert testimony, to support her contention that the cracks in the floor tile in question constituted an unreasonable risk of harm, and thus, Ms. Foster has failed to meet her shifted burden that she will be able to Issatisfy her evidentiary burden of proof at trial that the cracks in the floor tile in question constituted an unreasonable risk of harm.
In her opposition to this writ application, Ms. Foster again argues that Boomtown has failed to meet its initial burden of proof in showing that no genuine issues of material fact remain, thus precluding summary judgment. Ms. Foster argues that Boomtown has ignored its own incident report and “relies entirely upon the unsupported assumption that [Ms.] Foster could not have tripped because of a l/16th inch difference in tile height created by the severely cracked tile.” She further argues that the photographs “clearly illustrate that the tile crack is very severe,' very large, and had been there for a lengthy period of time,” and thus that provides circumstantial evidence that a genuine issue of material fact remains as to whether Boomtown employees should have known of the danger posed by the cracked floor. Finally, she asserts that there is circumstantial evidence that there is a genuine issue of material fact as to whether Boom-town personnel did anything to remedy the hazardous condition.
In reply to Ms. Foster’s opposition to its writ application, Boomtown again emphasizes that Ms. Foster failed to present any evidence in opposition to Boomtown’s re-urged motion for 'Summary judgment to create a genuine issue of material fact, including Ms. Foster’s failure to make any reference to record evidence in her opposition, her failure to reference to any testimony from Ms. Foster, Ms. Gordon, or any employee of Boomtown in her opposition, and her failure to retain an expert or even depose Mr. Vanderbrook, Boomtown’s expert.
By Order dated March 8, 2016, in compliance with Louisiana Code of Civil Procedure article 966(H), this Court:
1. assigned the writ application for argument and/or submission on this Court’s docket pursuant to Uniform Rules-Courts of Appeal, Rule 4-7;
[2. ordered relator to, supplement its writ application with better quality copies (color photographs if available) of all photographs included in relator’s re-urged motion for summary judgment filed in the district court (including all photographs attached to exhibits attached to said motion), properly indexed and labeled;
3. allowed relator the opportunity to file any desired additional briefing as a ¡supplement to its writ application by a certain date;
4. allowed respondent the opportunity to file any desired additional briefing *294 as a supplement to her opposition to the writ application by a certain date; and
5. allowed the parties the opportunity to request oral argument in writing by a certain date.
In response to said Order, relator filed a supplemental brief and exhibits, including Exhibits 1-11 to relator’s motion to re-urge summary judgment, which Exhibits included better quality copies of the photographs in question, as 'requested by this Court.' Relator further timely requested oral argument which was duly granted. In response to said Order, respondent did not file any additional briefing or supplementation to her opposition to the writ application. ’

ANALYSIS

A comprehensive summary as to the law applicable to summary judgment procedure, burdens of proof, and substantive law in a typical merchant trip-and-fall case is set forth in this Court’s recent opinion in Upton v. Rouse’s Enterprises, LLC, et al., 15-484 (La.App. 5 Cir. 2/24/16), at 5-8, 186 So.3d 1195, to-wit:
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Bell v. Parry, 10-369 (La.App. 5 Cir. 11/23/10), 61 So.3d 1, 2. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determina’tion of every action. La. C.C.P. art. 966(A)(2).
A motion for summary judgment should be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B)(2). A material fact is one that potentially insures or prevents recovery, affects a litigant’s ultimate Imsuccess, or determines the outcome of the lawsuit. An issue is genuine if it is such that reasonable persons could disagree;- if only one conclusion could be reached by reasonable persons, summary judgment is appropriate as there is no heed for trial oh that issue. Anny v. Babin, 12-164 (La.App. 5 Cir. 7/31/12), 99 So.3d 702, 705, writ denied, 12-1972 (La.12/14/12), 104 So.3d 441.
Under La. C.C.P. art. 966, the initial burden is on the mover to show that no genuine issue of material fact exists. If the moving party will not bear the burden of proof at trial, the moving party must only point out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. The nonmoving party must then produce factual support to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. La. C.C.P. art. 966 C(2); Bobino v. Jefferson Transit, 12-468 (La.App. 5 Cir. 2/21/13), 110 So.3d 1123,1125.
Appellate courts review a judgment granting or denying a motion for summary judgment de novo. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is , appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Breaux v. Fresh Start Properties, L.L.C., 11-262 (La.App. 5 Cir. 11/29/11), 78 So.3d 849, 852.
[[Image here]]
*295 .... La. R.S. 9:2800.6 ... sets forth the merchant’s duty and the claimant’s burden .of proof in claims against a merchant for damages arising out of a fall on the premises due to a condition existing on or in the premises: That statute reads [in pertinent part] as follows:'
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant’s premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant’s ' premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition, presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
| n(2) The merchant either created or had actual or constructive notice of the condition which caused the : damage,-prior to the occurrence. .
(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
In order to recover damages for injuries sustained in a slip or trip and fall accident, the plaintiff has' the burden of proving all three of the requirements of La. R.S. 9:2800.6(B), and the failure to prove any requirement is fatal to the cause of action. Alonzo v. Safari Car Wash, Inc., 11-111 (La.App. 5 Cir. 9/27/11), 75 So.3d 509, 511.
Under La. R.S. 9:2800.6, a merchant is required to exercise reasonable care to protect those who enter his establishment, to keep his premises safe from unreasonable risks of harm, and to warn persons of known dangers. Although the owner of a commercial establishment has an affirmative duty to keep his premises in a safe condition, he is not the insurer of the safety of his patrons. A store owner is not liable every time an accident happens. Richardson v. Louisiana-1 Gaming, 10-262 (La.App. 5 Cir. 12/14/10), 55 So.3d 893, 895-96.
In determining whether a condition is unreasonably dangerous, courts use a four-part risk-utility test, which requires consideration of the following factors: (1) the utility of the complained of condition;. .(2) .the .likelihood and magnitude of harm, including the obviousness and ap-parentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs activities in terms of social utility or whether the activities were dangerous by nature. Bufkin v. Felipe’s La., LLC, 14-288 (La.10/15/14), 171 So.3d 851, 856,
The secgnd factor of the risk-utility test focuses on whether the allegedly dangerous or defective condition was obvious and apparent. A defendant generally does not have a duty to .protect against that which is obvious and apparent. In order for an alleged hazard to be considered obvious and apparent, the condition should be one that is open and obvious to everyone who may potentially encounter it. Bufkin, 171 So.3d at 856. If the facts of a particular case show that the complained of condition should *296 be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. Helwig v. H.P.B., Inc., 15-389 (La.App. 5 Cir. 12/23/15), [182] So.3d [1169, 1172].
In addition to proving that the complained of condition presented an unreasonable risk of harm that was reasonably foreseeable, the plaintiff, in a claim against a merchant under La. R.S. 9:2800.6, is also tasked with proving that the merchant either created or had actual or constructive notice of the condition which caused the |12damage prior to the occurrence. When constructive notice is put at issue under La. R.S. 9:2800.6(B)(2), the claimant must come forward with positive evidence showing that the damage-causing condition existed for some period of time, and that such time was sufficient to place the merchant on notice of its existence. White v. Wal-Mart Stores, Inc., 97-393 (La.9/9/97), 699 So.2d 1081, 1082; Glass v. Home Depot U.S.A., Inc., 10-53 (La. App. 5 Cir. 9/28/10), 50 So.3d 832, 835.
Upon de novo review, in light of the foregoing applicable law, we find that the trial court erred in denying Boomtown’s re-urged motion for summary judgment. We first find that Boomtown, as the moving party, met its initial burden of proving that there is an absence of factual support for one or more elements essential to Ms. Foster’s claim: that the condition of the floor at the Boomtown Casino at the time in question presented an unreasonable risk of harm that was reasonably foreseeable to Boomtown. La. C.C.P. art. 966(C)(2). Mr.. Vanderbrook, Boomtown’s expert, testified that the vertical offset across the surface of the cracks in the floor tile in question was less than l/16th of an inch. Further, according to Mr. Vanderbrook, the cracks in the floor tile did not contain any vertical offset or holes which would “potentially catch someone’s shoe or create a tripping hazard.” Mr. Vanderbrook further specifically opined that: “[I]t is my opinion that the cracks in this tile did not present an unreasonable risk of harm to persons in this area.” Further, the affidavit of Ms. Richert confirmed that no other complaints were received about a fall hazard in the buffet area, and that between the time of the subject incident and the inspection by Mr. Vanderbrook, the cracked floor tile at issue was not repaired, removed, or replaced. At this point, the burden shifted to Ms. Foster, the nonmov-ing party, to show that the condition of the floor at the Boomtown Casino at the time in question presented an unreasonable risk of harm that was reasonably foreseeable to Boomtown.
11sWe next find that Ms. Foster failed to carry her shifted burden in that she failed to produce factual support to establish that she will be able to satisfy her evidentiary burden of proof at trial. Ms. Foster retained no expert to examine the cracks in the floor tile in question. She merely speculates in her opposition to the re-urged motion for summary judgment that the tile could have been loose causing the tile to shift and throwing her off balance. However, there is no factual support for this theory. Ms. Foster’s deposition testimony is that “her foot got caught in the crack.” She never described the tile as loose and could only describe the crack as a “little gap.” Though Ms. Foster has proved that there were cracks in the tile, she has provided no factual support that the presence of the cracks in the tile created an unreasonable risk of harm that was reasonably foreseeable.
We now turn to Ms. Foster’s argument that it is up to the trier of fact to determine if the cracks in the floor tile in question created an unreasonable risk of harm, and accordingly, summary judgment is not appropriate in this case. The Louisiana Supreme Court has clarified any con *297 fusion on this subject and made clear that summary judgment is not precluded on the issue of whether a complained of condition creates an unreasonable risk of harm. See Allen v. Lockwood, 14-1724 (La.2/13/15), 156 So.3d 650, and Bufkin v. Felipe’s La., LLC, suprra. See also Tipton, supra, at 13-14.
Accordingly, we find that Ms. Foster failed to establish that a genuine issue of material fact exists concerning the presence of an unreasonably dangerous condition on the Boomtown premises at the time of Ms. Foster’s fall of which Boomtown knew or should have known. Further, Ms. Foster has not shown that Boomtown is not entitled to summary judgment as a matter of law. As such, we are constrained to grant this writ application, reverse the trial court’s denial of 114relator’s re-urged motion for summary judgment, grant relator’s re-urged motion for summary judgment, and dismiss this matter with prejudice at plaintiffs costs.

CONCLUSION

For the foregoing reasons, this writ application is hereby granted, the trial court’s denial of relator’s re-urged motion for summary judgment is hereby reversed, relator’s re-urged motion for summary judgment is hereby granted, and this matter is dismissed -with prejudice at plaintiffs costs.

WRIT GRANTED: JUDGMENT REVERSED: MOTION FOR SUMMARY JUDGMENT GRANTED; MATTER DISMISSED

. In its writ application, relator notes that it was improperly named "Pinnacle Entertainment, Inc., d/b/a Boomtown Belle Casino” in this suit.

. Mr. Vanderbrook’s Curriculum Vitae, along with a listing of deposition and trial testimony previously given by him in other cases, were attached to his affidavit.

. Photographs showing the buffet area of the casino and the particular cracked floor, tile in question were also attached to Boomtown’s incident report.

. A photograph attached to plaintiff’s responses to requests for production of documents, and a similar photograph attached to Boomtown’s incident report, both of which were included with Boomtown’s re-urged motion for summary judgment, indicate that the shoes Ms. Foster was wearing at the time she fell were platform-type shoes, rather than high heels.

. A transcript of this hearing was not included in the writ application or in the opposition thereto.