GRAVOIS, J.
*363 In this slip and fall case, plaintiff/appellant, Mrs. Anna Landry, appeals a summary judgment granted in favor of defendants, Leson Chevrolet Company, Inc. ("Leson"), and its liability insurer, Western Heritage Insurance Company (collectively "defendants"), which judgment dismissed her claims against defendants with prejudice. For the following reasons, we find that genuine issues of material fact remain in this matter that preclude the granting of summary judgment in favor of defendants at this time. We accordingly reverse the judgment and remand the matter for further proceedings.
FACTS AND PROCEDURAL HISTORY
On the morning of April 13, 2015, Mrs. Landry brought her vehicle, a Suburban, to Leson Chevrolet in Harvey, Louisiana, for scheduled service. In her deposition, Mrs. Landry testified that she lived about thirty minutes from Leson and that it had started raining while she was on the way there. When she arrived at Leson's service department, which she had used regularly for her vehicle's service in the past, she was directed by a Leson employee to park her vehicle in one of the four service bays, which had ceramic floors and which were covered and protected from the elements. The bays were described as four distinct driveways into which customers would pull their cars and be met by a service agent. When Mrs. Landry exited her vehicle under the covered service bay, she stepped out on to the ceramic floor and immediately fell, landing on her bottom. Mrs. Landry stated that she was wearing flip flops at the time. She stated that she always exited her vehicle in the same manner, by turning sideways to the left and placing her feet on the running board of her vehicle to aid in her descent.
After being helped to her feet by a Leson employee, Mrs. Landry went with the service technician, Shane Lambert, to his cubicle, where he wrote up her service ticket and secured her "loaner" car from the dealership, after which she drove straight to the emergency room because she was in great pain. At the emergency room, she was examined and diagnosed with a broken tailbone. She returned to Leson two days later, requesting that they author an incident report regarding her fall in the service bay. On that date, Mrs. Landry met with Mr. Timothy Colson, the service department manager, who was not present when she had fallen two days earlier. After speaking with Mrs. Landry and two other Leson employees who were present on the day of her fall, Mr. Colson prepared an incident report of Mrs. Landry's fall.
In her petition, filed on April 12, 2016, Mrs. Landry alleged that she slipped and fell due to slick and wet conditions of the floor of Leson's dealership due to rainwater that had accumulated on the service bay floor. She alleged that the excessive water and/or puddle on the floor where she fell constituted a hazardous and unreasonably unsafe condition for dealership patrons like her that was reasonably foreseeable to Leson, about which Leson had actual or constructive notice, and about which Leson failed to exercise reasonable care to remedy. She further alleged that Leson did not provide any warning to its customers of the slick and wet conditions of the floor of its dealership. She asserted that she was entitled to damages from defendants pursuant to the general negligence *364 principles of La. C.C. arts. 2315 and 2316, and the premises liability principles under La. C.C. arts. 2317 and 2317.1.
Defendants moved for summary judgment on January 20, 2017, arguing that they are not liable for any of Mrs. Landry's injuries because of the open and obvious condition that she observed and of which she was aware prior to her alleged slip and fall. They also argued that Mrs. Landry cannot meet her burden that the alleged condition of the service bay at the time of the incident constituted an unreasonable risk of harm from which Leson owed Mrs. Landry a duty of protection. Additionally, they argued that Mrs. Landry cannot prove that Leson had created the condition or had actual or constructive notice of the condition.
In their motion for summary judgment, defendants argued that Mrs. Landry's claim for damages is governed by La. R.S. 9:2800.6. Defendants argued that the evidence produced in discovery showed that Mrs. Landry was aware that the floors were generally wet (and that some of the rainwater came from her car) and that she agreed that the generally wet condition of the floor was "open and obvious." Accordingly, they argued that under La. R.S. 9:2800.6, they owed no duty to Mrs. Landry, and that she could not meet her evidentiary burden of proof at trial. Their motion also pointed out that Mrs. Landry could not establish the temporal element of La. R.S. 9:2800.6, as she could not state exactly what was on the floor where she specifically fell, nor how long it might have been there, given her deposition testimony that she did not look at the floor prior to stepping out of her vehicle. Accordingly, they argued, Mrs. Landry did not present any evidence that Leson had actual or constructive notice of the alleged condition.
Mrs. Landry opposed the motion for summary judgment, arguing that genuine issues of material fact remained and that defendants had not borne their statutory burden of proof.[1] Citing the deposition testimony of several Leson employees, Mrs. Landry argued in her opposition that their testimonies established that Leson had no policies or procedures in place for maintaining the service bay floor hazard-free, that Leson did not exercise reasonable care to address the "hazardous condition" of its floor that was "extremely wet from rain," and that Leson did nothing to warn its customers of the hazardous condition that morning. She also argued that Leson could not be exonerated because the hazardous condition was "open and obvious," because material issues of fact remained, particularly about Leson's rainy day procedures. Finally, she argued that material issues of fact remained regarding whether Leson had actual or constructive notice of the condition.
The motion for summary judgment was heard on September 13, 2017, whereupon the trial court took the matter under advisement. On September 15, 2017, the trial court issued a written judgment granting defendants' motion for summary judgment, dismissing Mrs. Landry's case with prejudice. The trial court also issued written reasons for judgment that same day. Mrs. Landry's timely appeal followed.
On appeal, Mrs. Landry argues that the trial court erred in applying an "inapplicable" burden of proof, namely that she failed to put forth "concrete" evidence in support of her claim. She also argues that the trial court erred when it ignored direct *365 and circumstantial evidence of the unreasonably dangerous condition-the rain-slickened ceramic floor-upon which she slipped. Alternatively, she argues that the trial court erred in otherwise failing to find that genuine issues of material fact existed, thus precluding the granting of defendants' motion for summary judgment.
ANALYSIS
"After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(A)(3). "The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." La. C.C.P. art. 966(D)(1).
On appeal, our review of summary judgments is de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Pizani v. Progressive Ins. Co. , 98-225 (La. App. 5 Cir. 9/16/98), 719 So.2d 1086, 1087. Thus, appellate courts ask the same questions the trial court does in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Breaux v. Fresh Start Properties, L.L.C. , 11-262 (La. App. 5 Cir. 11/29/11), 78 So.3d 849, 852. A decision as to the propriety of a grant of a motion for summary judgment must be made with reference to the substantive law applicable to the case. Bach v. Bd. of River Port Pilot Comm'rs , 15-765 (La. App. 5 Cir. 5/12/16), 193 So.3d 355, 362.
The parties argued below and before this Court that the substantive law applicable to this case is La. R.S. 9:2800.6,[2] which provides:
A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, in addition to all other elements of his cause of action, all of the following:
(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.
*366 (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
C. Definitions:
(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.
(2) "Merchant" means one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn.[3]
D. Nothing herein shall affect any liability which a merchant may have under Civil Code Arts. 660, 667, 669, 2317, 2322, or 2695.
As this Court recently stated in Hazelett v. Louisiana-1 Gaming , 16-297 (La. App. 5 Cir. 12/21/16), 210 So.3d 447, 451-52 :
... [I]n a slip and fall case against a merchant, a plaintiff must prove the essential elements of a standard negligence claim in addition to the requirements under La. R.S. 9:2800.6. Burns v. Sedgwick Claims Mgmt. Servs. , 14-421 (La. App. 5 Cir. 11/25/14), 165 So.3d 147, 152 ; Sheffie v. Wal-Mart Louisiana LLC , 13-792 (La. App. 5 Cir. 2/26/14), 134 So.3d 80, 83-84, writ denied , 14-0881 (La. 6/20/14), 141 So.3d 813. The failure to prove any of the requirements enumerated in La. R.S. 9:2800.6 is fatal to a plaintiff's cause of action. Foster v. Pinnacle Entm't, Inc. , 16-8 (La. App. 5 Cir. 4/27/16), 193 So.3d 288, 295 ; Upton v. Rouse's Enter. , LLC, 15-484 (La. App. 5 Cir. 2/24/16), 186 So.3d 1195, 1199, writ denied , 16-0580 (La. 5/13/16), 191 So.3d 1057. The merchant does not have to make a positive showing of the absence of the existence of the condition prior to the fall. White v. Wal-Mart Stores, Inc. , 97-0393 (La. 9/9/97), 699 So.2d 1081, 1086. There is no provision in La. R.S. 9:2800.6 that permits a shifting of the burden to the merchant. Id.
To determine whether a condition is unreasonably dangerous, courts are required to consider the following factors in the risk-utility test: (1) the utility of the complained of condition, (2) the likelihood and magnitude of harm, including the obviousness and apparentness of the condition, (3) the cost to prevent the harm, and (4) the nature of the plaintiff's activities in terms of social utility or whether the activities were dangerous by nature. Bufkin v. Felipe's , 14-288 (La. 10/15/14), 171 So.3d 851, 856.
In addition to proving that the condition presented an unreasonable risk of harm that was reasonably foreseeable, the plaintiff must also prove that the merchant either created or had actual or constructive notice of the condition which caused the damage prior to the *367 occurrence. Upton , 186 So.3d at 1200. When constructive notice is at issue, the claimant must come forward with positive evidence showing that the damage causing condition existed for some period of time, and that such time was sufficient to place the merchant on notice of its existence. Id. , at 1200 (citing White v. Wal-Mart Stores, Inc. , 97-0393 (La. 9/9/97), 699 So.2d 1081, 1082 ).
Mere conclusory allegations, improbable inferences, and unsupported speculation will not support a finding of a genuine issue of material fact. Sears v. Home Depot, USA, Inc. , 06-201 (La. App. 4 Cir. 10/18/06), 943 So.2d 1219, 1228, writ denied , 06-2747 (La. 1/26/07), 948 So.2d 168. Even if contained in a deposition, such inferences, allegations, and speculation are not sufficient to satisfy the opponent's burden of proof. Id.
Under La. R.S. 9:2800.6, a plaintiff has the burden of proving the existence of a condition, that the condition presented an unreasonable risk of harm, that the risk of harm was reasonably foreseeable, and that the merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence. Because a plaintiff must prove each element under La. R.S. 9:2800.6, the failure to prove any element is fatal to the plaintiff's cause of action. Burns v. Sedgwick Claims Mgmt. Servs. , 14-421 (La. App. 5 Cir. 11/25/14), 165 So.3d 147, 153.
FIRST ASSIGNMENT OF ERROR
Erroneous legal standard
Mrs. Landry first argues that the trial court committed an error of law by requiring her to meet a heightened burden of proof, rather than the preponderance of the evidence standard required by La. R.S. 9:2800.6. She bases her argument on the trial judge's statement, in his written reasons for judgment, that she had "put forth no concrete evidence to support the claim that she fell because of an unreasonably dangerous condition caused by rainwater on the ground where she stepped." (Emphasis added.)
A plaintiff's burden of proof in a negligence case is preponderance of the evidence, which means that the plaintiff must establish each required element of her claim as "more likely than not." In a summary judgment proceeding, La. C.C.P. art. 966 requires that a plaintiff, as the non-mover who nonetheless has the burden of proof at a trial, must come forward with factual evidence that she will be able to meet her statutory burden of proof, following the mover's having pointed out that there is an absence of factual support for one or more elements essential to the plaintiff's claim.
Upon de novo review, we find that the trial court's use of the adjective "concrete" to describe the noun "evidence" in its written reasons for judgment did not signify that the trial court misunderstood the legal burden of proof applicable to Mrs. Landry's case or that he employed a more stringent standard of proof required by law and specifically La. R.S. 9:2800.6.[4] This assignment of error is without merit.
SECOND ASSIGNMENT OF ERROR
Burden of proof
Next, Mrs. Landry argues that she presented "sufficient" evidence of the *368 unreasonably dangerous condition of Leson's service bay floor so as to preclude the granting of summary judgment in Leson's favor. Mrs. Landry cites the testimonies of herself and the three Leson employees who gave depositions, all of whom testified that it was raining on the morning Mrs. Landry came to Leson, that the tile floor in the service bay was wet, and that other vehicles present in the bay when Mrs. Landry arrived were wet from the rain. She argues that Leson had no rainy day policies in place to address water on the floor. She also argues that the presence of water on the service floor bay was not speculation. Alternatively, Mrs. Landry argues that the deposition testimonies establish that genuine issues of material fact remain.
In her deposition, Mrs. Landry testified that it began to rain as she was en route to Leson from her home in Marrero, an approximately 30-minute drive. She arrived before 9:00 a.m. It was still raining as she arrived at Leson, and the rain was moderate (not light or extremely heavy), according to her testimony. She said that having observed the rain, she knew "in her mind" that there would be wetness inside the service bay. However, also "in her mind," she testified, the presence of water on tile was not slippery, because in the past she has had to walk through water and it has not been slippery. She testified that she did not see any "wet floor" signs in the service bay that day.[5]
Mrs. Landry pulled into the second lane of the service bay, as directed by service personnel. In her deposition, she stated that water appeared to be dripping off of cars entering the service bay, including her own. She agreed that the dripped water off of the other cars was "open and obvious" to her. She also testified, however, that she did not look at the floor of the bay immediately outside her own car door prior to stepping down out of her vehicle, so she did not know if water was already on the tile floor or if some dripped off of her own car, although she agreed that if water were present there, some of it may have dripped from her car. She assumed that she slipped on some water, because her pants were wet when she got up.
The "Slip and Fall Incident Report," authored by Mr. Colson two days after the incident at Mrs. Landry's request (and which Mrs. Landry signed), was admittedly compiled from information supplied by Mr. Paul Sposito, the fixed operations manager at Leson, Mr. Lambert, and Mrs. Landry, as Mr. Colson was not present on the day of the incident. The incident was described as "The service drive was extremely wet from heavy rain fall." It describes the weather conditions as "raining-severe," and the condition of the service drive "[w]alking surface conditions" as "wet from rain."
Paul Sposito testified in deposition that though he was working on the day that Mrs. Landry fell, he was not present in the service bay when she fell. He never spoke to Mrs. Landry and did not speak to anyone who saw her fall. He was told that the incident occurred in Lane 2 of the service bay. He agreed that it was raining that day, and that it was reasonable to conclude that the service drive floor would have had some water on it that had dripped from entering vehicles.
The testimony of Mrs. Landry and the Leson employees established the facts that it was raining and that some water was present on various areas of the floor of the service bay. Mrs. Landry testified that she assumed there was water on the floor outside *369 of her vehicle because her pants were wet after she fell. However, she did not look at the floor before she stepped out of her vehicle, and could not definitely say that water was on the floor. She also agreed that the water could have come from her own car, which had just been out in the rain. Shane Lambert testified that he walked over to Mrs. Landry's vehicle without incident, immediately prior to the fall, but he did not witness the fall. However, the slip and fall report, authored by Mr. Colson from information supplied by Mr. Lambert and Mr. Sposito, describes the weather conditions as "heavy rain" and the service drive as "extremely wet" from rain. Furthermore, Mr. Lambert and Mr. Sposito testified in their depositions that it would be reasonable to conclude that given the weather conditions, there would have been water on the floor of the service bay, particularly where it might have dripped off of cars. In order to determine whether or not the area where Mrs. Landry fell was wet, and whether Leson had the required notice, the trier of fact would have to weigh the competing evidence, which is not permitted on a motion for summary judgment. Boros v. Lobell , 15-55 (La. App. 5 Cir. 9/23/15), 176 So.3d 689, 693.
Considering the foregoing, upon de novo review, we find that the evidence presented at the hearing establishes that genuine issues of material fact remain at this time as to the existence of a hazardous condition on the floor, including the nature and degree of wetness on the floor, and whether Leson had the requisite notice thereof. The trial court accordingly erred in granting the motion for summary judgment.
THIRD ASSIGNMENT OF ERROR
Remaining issues of material fact
In her third assignment of error, Mrs. Landry argues, alternatively, that genuine issues of material fact remain regarding Leson's rainy day procedures that preclude summary judgment. In brief, she argues that none of Leson's employees could provide any specifics as to what measures were taken on the morning of April 13, 2015 either to correct the wet condition of the service bay's ceramic tile floor or to warn patrons like Mrs. Landry of the slippery condition.
The record evidence showed that the service area opened for business at 7:30 a.m. and that Mrs. Landry arrived somewhere around 9:00 a.m. She testified that it began raining as she was on her way from her home in Marrero to Leson, located in Harvey, about 20-30 minutes from her home. There was no testimony regarding how long it had been raining at Leson when Mrs. Landry arrived. The testimony was clear, however, that Leson did have rainy day procedures, albeit unwritten, to deal with rainwater on the floor, as well as other types of spills.
Mr. Colson, Mr. Sposito, and Mr. Lambert testified via depositions regarding Leson's procedures to keep the floor in the service bay clean, and also testified specifically regarding "rainy day" procedures. Mr. Lambert, who greeted Mrs. Landry at her vehicle when she pulled up in the service bay that morning and wrote down her service request, testified that the porters are generally responsible for maintenance and cleaning in the service bays, including the floors, although every employee is responsible for inspecting for hazards. Porters are responsible for putting out the "wet floor signs" when it rains, although any employee can also do that. He did not recall if the signs were out that day. He said that the porters had a special machine, which was nicknamed the "Zamboni," that was used regularly as needed to clean the service bay floor, mop *370 up any spills, and degrease the floors. He said that he regularly saw the porters clean the floors on rainy days, but he did not remember if the porters had used the machine or mops on that particular day. He remembered that he walked towards Mrs. Landry's car to greet her without incident. He did not know how long it had rained that day, or if it had rained the day before.
Mr. Lambert testified that he was unware if the rainy day procedures were written down. He did not know if the porters or other employees kept a log of when they cleaned the floors, or even if there was a daily log.
Mr. Sposito's testimony regarding Leson's rainy day procedures generally mirrored Mr. Lambert's testimony. He did specifically recall that when he entered the service bay, after Mrs. Landry had fallen, the yellow "wet floor" warning signs were deployed between Lanes 1 and 2 and between Lanes 3 and 4. Mr. Sposito was not familiar with any written log for floor checks. He said that Leson does not keep such a log, or a log of spills actually cleaned up, but that all employees knew what to do if they saw a spill, which would be to clean it up.
Mr. Colson, the service department manager, testified in his deposition that he was not working on the day Mrs. Landry fell, but that he was the employee who filled out the report when she returned two days later. Mr. Sposito was his direct supervisor. Mr. Colson identified the report, and said that this was the first time that he had ever filled out a slip and fall report.
Mr. Colson testified that it was standard procedure to place the "wet floor" warning signs on days that it rained. He had seen it done regularly and said that he had done it himself as well. He said that they even place the warning signs if they hear thunder, before it rains. He said that the signs are usually placed between the first and third lanes and that two to four signs are usually used. The porters usually put the signs out, but every employee could also put signs out. He testified that no daily log is kept of when or how many times the floors are cleaned. He was not aware of any written procedures pertaining to how to maintain a hazard free service drive, but said that it was their usual practice to take care of every condition that arose. He also described the "Zamboni" machine used by the porters, but did not state whether it had been needed and/or used that day. In his eleven years at Leson, he was aware of only one other customer falling in the service bay before Mrs. Landry, but that had occurred in a completely different area. He was unaware of any roof leaks in the service bay.
Though Mr. Colson testified that he had seen the wet floor signs placed in the service bay at the sound of thunder before rain began, there was no testimony that the signs were so placed on this particular day. Mrs. Landry testified that she did not see the wet floor signs; Mr. Sposito testified that he saw the signs in place at a point in time after Mrs. Landry fell, as he was returning to the service bay. There is an absence of testimony or evidence in the record to show whether the signs had been placed in the service bay, as per rainy day procedures, prior to Mrs. Landry's fall. Accordingly, a genuine issue of material fact remains as to whether Leson's rainy day procedures were implemented in a timely manner, thereby precluding summary judgment at this time.
Leson has argued that plaintiff's admission in her deposition that the water on the service bay floor was "open and obvious" defeats her claim. However, having found that genuine issues of material *371 fact remain at this point as noted above, we disagree. As previously noted, in determining whether a condition is unreasonably dangerous, courts have adopted a four-part risk-utility balancing test. This test requires consideration of: (1) the utility of the complained-of condition; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiff's activities in terms of its social utility or whether it is dangerous by nature. Broussard v. State, through Office of State Bldgs., Div. of Admin. , 12-1238 (La. 4/5/13), 113 So.3d 175, 184. The second prong of the risk-utility balancing test focuses on whether the defective condition is obvious and apparent, or as it has come to be commonly known, "open and obvious." Generally, a defendant does not have a duty to protect against an open and obvious hazard. Id. However, Broussard was clear that each case involving an unreasonable risk of harm analysis must be judged under its own unique set of facts and circumstances, and that there exists no bright line rule. "Open and obvious" is but one part of the fact-intensive four-part test to determine whether a condition is unreasonably dangerous.
Considering the foregoing, upon de novo review, we find that a genuine issue of material fact also remains at this time as to whether Leson had followed its rainy day procedures prior to Mrs. Landry's fall.[6] The trial court accordingly erred in granting the motion for summary judgment.
APPLICABILITY OF LA. R.S. 9:2800.6
As noted above, the parties argued below and before this Court that the substantive law applicable to this case is La. R.S. 9:2800.6. As set forth above, this statute defines "merchant" as "one whose business is to sell goods, foods, wares, or merchandise at a fixed place of business. For purposes of this Section, a merchant includes an innkeeper with respect to those areas or aspects of the premises which are similar to those of a merchant, including but not limited to shops, restaurants, and lobby areas of or within the hotel, motel, or inn." There is no evidence in the record, however, that Leson sold goods, foods, wares, or merchandise in its service area. The evidence in the record indicates only that customers dropped off their cars in the service area to be serviced or repaired. Although not raised by the parties, upon review, we also find that a material issue of fact remains at this time as to whether Leson's service area meets the definition of "merchant" in La. R.S. 9:2800.6(C)(2).[7]
*372 CONCLUSION
For the foregoing reasons, the summary judgment granted in favor of defendants, dismissing Mrs. Landry's case with prejudice, is reversed. The matter is remanded for further proceedings.
REVERSED AND REMANDED

In Mrs. Landry's original opposition, she noted that much discovery remained outstanding, including that no depositions had been taken of Leson's employees. She filed a supplemental opposition following further discovery, from which her arguments are cited.

See discussion, infra , regarding the applicable law.

See discussion, infra , on the definition of "merchant."

We note that this Court has previously employed the same adjective without altering the plaintiff's legal burden of proof. See Frank v. Boomtown L.L.C. , 12-382 (La. App. 5 Cir. 12/11/12), 106 So.3d 227, 232 ("In the present case, plaintiffs have put forth no concrete evidence to prove that defendants either created or had actual or constructive knowledge of the condition of the restroom floor immediately prior to Mrs. Frank's fall." (Emphasis added.) ).

However, the written accident report, signed two days later by Mrs. Landry, states that the wet floor signs were deployed that day.

Mrs. Landry claimed in her opposition that Leson had no rainy day procedures in place. However, the testimony of the Leson employees was clear that Leson did in fact have rainy day procedures for dealing with rain water, but they were unwritten. La. R.S. 9:2800.6(B)(3) specifically states that "[i]n determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care."

In this regard, we note that two courts of appeal have held that La. R.S. 9:2800.6 is applicable to the servicing and detailing area of a car dealership, rather than the more general laws regarding premises liability listed in La. R.S. 9:2800.6(D). Without analysis, the Second Circuit applied (the 1988 version of) La. R.S. 9:2800.6 to a slip and fall in the service department of a car dealership. See Reeves v. U.S.F.&G. Co. , 614 So.2d 857 (La. App. 2 Cir. 2/24/93). Also, the Fourth Circuit applied it to a parking area of a dealership immediately adjacent to an area where cars were detailed, again without analysis or consideration whether the car dealership met the definition of "merchant." See Martin v. Performance Motorwerks, Inc. , 03-1219 (La. App. 4 Cir. 6/16/04), 879 So.2d 840, writ denied , 04-2248 (La. 11/19/04), 888 So.2d 207. While the holdings of other Circuits are generally persuasive, they are not binding on this Court. We also note that both Reeves and Martin applied earlier versions of the statute prior to the 1996 amendment of the definition of "merchant" in La. R.S. 9:2800.6(C)(2), which narrowed the definition to include only particular, but not all, areas of an "inn." A car dealership, like an inn, may be composed of different areas, such as a showroom, a service department, and a detailing area, some or all of which may be similar to a merchant as described in La. R.S. 9:2800.6(C)(2). No Louisiana appellate court (nor the Louisiana Supreme Court) has yet specifically addressed by analysis whether the service area of a car dealership fits within the definition of a "merchant" as found in the current and applicable version of La. R.S. 9:2800.6(C)(2).
We also note Weber v. Ray Brandt Nissan, Inc. , 04-0004 (La. App. 4 Cir. 8/18/04), 880 So.2d 999, a slip and fall case wherein plaintiff sued a car dealership who had displayed an automobile inside a shopping mall where plaintiff fell. The accident did not occur on the premises of the car dealership, and therefore it is not instructive in the instant matter.